IN MATTER OF DORRIS MOTOR CAR COMPANY v. WEBSTER COLBURN, Plaintiff in Error.

WEBSTER COLBURN, Appellant, v. DORRIS MOTOR CAR COMPANY, F. C. THOMPSON, H. B. KREN-NING and PARKER H. WOODS.

In Banc, March 12, 1925.

1. **CONSTITUTIONAL LAW**: Title: Dissolution of Corporations. The title to the Act of 1921, Laws 1921, page 264, attempting to amend Sections 9756, 9757 and 9759, Revised Statutes 1919, relating to the dissolution of private corporations, was sufficient.

2. ———: ———: Misleading: Appeal from Judgment Dissolving Corporation. The title of the Act of 1921, Laws 1921, page 264, which was: "An act to repeal Sections 9756, 9757 and 9759, Revised Statutes 1919, and to enact three new sections in lieu thereof, . . . relating to the voluntary dissolution of private corporations, judgments of dissolution, . . . and appeals from such judgments, . . ." gave notice that the bill dealt with the right of appeal from judgments of dissolution, and that it contained a clause declaring that "from all such final orders, judgments and decrees which may be made or rendered in any such proceedings, appeals may be taken as in civil cases, except that no appeal shall be taken from a judgment allowing the dissolution of a corporation under

the provisions of this article," and was not misleading, since the Legislature must be presumed to have known that the then existing statutes gave an unrestricted right of appeal from such judgments.

3. ———: ———: Appeal from Judgment Dissolving Corporation: Repeal by Implication. Neither Section 28 of Article 4 of the Constitution, declaring that "no bill shall contain more than one subject, which shall be clearly expressed in its title," nor Section 34, relating to amendments of existing statutes, has any application to repeals or amendments by implication. Consequently if it be conceded that the Act of 1921, Laws 1921, page 264, amending existing statutes relating to private corporations, contains provisions which modify, amend or repeal in part the general statute relating to appeals from judgments and the statute relating to the consolidation of such corporations, still the fact that its title contains no words to indicate such amendments or repeals does not render the act obnoxious to either of said constitutional sections.

4. ———: ———: ———: Use of Properties of Dissolved Corporation: Misleading. The words "and providing that certain properties shall not be diverted from certain uses" found in the title of the Act of 1921, Laws 1921, page 264, amending existing statutes relating to the dissolution and consolidation of private corporations, while vague and indefinite, are not misleading, for they might have been entirely omitted without invalidating the act, since the provision to which they refer is germane to the general subject of the act, namely, the dissolution of such corporations.

5. ———: Dissolution of Corporation: Contrary to Charter: Impairment of Contract: Denial of Appeal. The right to an appeal from a judgment dissolving a corporation is purely statutory and is one in which a stockholder has no vested interest. The existing statute, enacted long before the corporation received its charter authorizing it to do business for a period of fifty years, provided that upon the adoption of a resolution by the owners of two-thirds of its stock favoring dissolution of the corporation, it could be dissolved by a judgment of the circuit court, if upon a hearing, the court should be satisfied that the prayer for dissolution "can be granted without prejudice to the public welfare or interest of the stockholders or the creditors of such corporation," and under this statute the court in 1924 rendered a judgment dissolving the corporation. The Act of 1921, Laws 1921, page 264, introduced into the existing statute relating to the dissolution of private corporations two major amendments: (a) one making it mandatory upon the circuit court to render judgment of dissolution in every case in which the owners of ninety per cent of the stock had adopted a resolution favoring dissolution, regardless of the prejudicial effect which such dissolu-

Dorris Motor Car Co. v. Colburn.

tion might have upon the interest of the owners of the remaining stock, and (b) another prohibiting an appeal from any judgment of dissolution. *Held, first,* that the two amendments are wholly unrelated, and being severable the act may be constitutional as to one and unconstitutional as to the other; *second,* that the existing statute authorizing dissolution in the discretion of the court upon the adoption by the owners of two-thirds of the stock favoring it, was as much a part of the corporation's charter as would have been a like provision expressly written therein; and, *third,* that the constitutionality of the amendment authorizing the owners of ninety per cent of the stock to force a dissolution is not for determination, because the judgment was based on the prior statute, and the second amendment denies to a dissenting stockholder the right to appeal from such judgment, and such right granted by the prior law was not a vested right, and the taking away of that right by the amendment in no wise impaired the contract existing between the corporation and its stockholders.

6. **APPEAL: Due Process: Equal Protection: Retroactive Statute.** The right to an appeal is a mere matter of further or additional remedy, which may accordingly be taken away by a retroactive statute. Nor does a withdrawal of the right from a party against whom judgment has been rendered by the trial court operate to deprive him of due process of law or to deny him equal protection of the laws. If a single hearing is not due process, doubling it will not make it so; and the power of the State to classify judicial proceedings carries with it the power to make such a classification as will give to parties belonging to one class the right to an appeal, and to deny the right to parties belonging to another class.

7. ————: **Denial Includes Denial of Writ of Error.** The amended statute (Sec. 9759, Laws 1921, p. 264) declaring that "no appeal shall be taken from a judgment allowing the dissolution of a corporation under the provisions of this article" prohibits writs of error as well as appeals, and no writ of error is available to review a judgment of dissolution, and if sued out should be dismissed. The purpose of the language used was to deny a review of a judgment of dissolution by any appellate proceeding.

8. **INJUNCTION: To Enjoin Prosecution of Suit: Other Adequate Remedy.** Where through fraud, accident or mistake such an advantage will be gained in a suit at law as will render it an instrument of great injustice, and it is against conscience to allow it to proceed, equity will interfere by injunction; but where the owners of over two-thirds of the stock of a corporation adopted a resolution favoring its dissolution and thereupon filed their petition in the circuit court asking for such dissolution, and to that suit, which

was purely a statutory action at law, a dissenting stockholder filed his answer and cross-bill, which converted the suit into one in equity, and the matters in the cross-bill set forth and the relief sought were responsive to the petition to dissolve, and a demurrer thereto was· overruled, he is not entitled to an injunction to enjoin the corporation, its officers and agents from further prosecution of the dissolution suit and to appoint a receiver, for by his cross-bill he could have invoked precisely the same relief sought to be obtained by the injunction.

9. ———: To Enjoin Action at Law: To Obtain Review from Judgment Where No Appeal Is Allowed. An injunction to enjoin the prosecution of an action at law is not available where the statute does not permit an appeal from a judgment in the action at law and the only purpose of the suit is to obtain appellate review of the legal action; and it being obvious that the purpose of the injunction is to obtain appellate review despite the prohibition of the statute, an appeal from a judgment denying the relief sought by the injunction will not be entertained. No court has the right, under the guise of an injunction suit, to review judgments rendered or to be rendered in cases in which the statute prohibits an appeal or writ of error.

Citations to Headnotes: 1 to 4, Statutes, 36 Cyc. 1050, 1031, 1064; 5. Appeal and Error, 3 C. J. 29; Constitutional Law, 12 C. J. 588; Corporations, 14a C. J. 3752, 3792; Statutes, 36 Cyc. 976, 985; 6, Appeal and Error, 3 C. J. 30; Constitutional Law, 12 C. J. 588, 872, 1015; 7, Corporations, 14a C. J. 3792; 8, Injunctions, 32 C. J. 90, 92, 98; 9, Injunctions, 32 C. J. 73.

Writ of Error to and Appeal from St. Louis City Circuit Court.—*Hon. A. B. Frey,* Judge.

WRIT OF ERROR DISMISSED.

ORDER DENYING APPEAL AFFIRMED.

*Leahy, Saunders & Walther* for plaintiff in error and appellant.

(1)    Sections 9756, 9757 and 9759, Revised Statutes 1919, of the corporation dissolution statute as amended by Act of 1921, Laws 1921, p. 264, are unconstitutional and void, because the title of the act does not conform to the requirements of Section 28 of Article IV of the Constitution. St. Louis v. Weitzel, 130 Mo. 600; City v. Payne, 71 Mo. 159; Nalley v. Ins. Co., 250 Mo. 452; State

Dorris Motor Car Co. v. Colburn.

v. Sloan, 258 Mo. 305; State v. Crites, 209 S. W. 863; St. Louis v. Wortman, 213 Mo. 121; Williams v. Railroad, 233 Mo. 666; Hardware Co. v. Fisher, 269 Mo. 271.   (2) The said act is unconstitutional as applied to the Dorris Motor Car Company, which was organized in 1905, for a period of fifty years.   (a)   Stockholders have a contractual right to have a corporation continued during the entire period of its incorporation.  2 'Cook on Corp. (2 Ed.)  secs. 492-4; Tanner v. Lindell Railway Co., 180 Mo. 16; Feld v. Roanoke Inv. Co., 123 Mo. 603; Luehrmann v. Lincoln Trust Co., 192 S. W. 1032.  (b)  If applicable to the Dorris Motor Car Company, such contractual right is impaired by the statute, and the statute is, therefore, violative of the provisions of the Missouri and Federal constitutions.  Secs. 15, 20, 30, art. 2, Mo. Constitution; Sec. 19, art. 12, Mo. Constitution; Sec. 1 of 14th Amend. U. S. Constitution; Sec. 10, art. 1, U. S. Constitution; Trustees Dartmouth College v. Woodward, 4 Wheat. 520; In re Newark Library Assn., 64 N. J. L. 217; Einstein v. Raritan Woolen Mills, 74 N. J. Eq. 624; State ex rel. Haeussler v. Greer, 78 Mo. 188; Farrington v. Tennessee, 95 U. S. 679; Clearwater v. Meredith, 68 U. S. 39; Covington v. Sandford, 164 U. S. 578, 593; State Bank v. Knoop, 57 U. S. (16 How.) 369, 380; Wilmington Railroad v. Reid, 80 U. S. (13 Wall.) 264; Tucker v. Russell, 82 Fed. 263; Abbott v. Rubber Co., 33 Barb. (N. Y.) 578; Hays v. Commonwealth, 82 Pa. St. 518; N. O. J. & G. Railroad v. Harris, 27 Miss. 536.  (3)   The dissolution petition in this case does not comply strictly with the terms of the statute, and, therefore, no jurisdiction over the subject-matter was conferred upon the circuit court.  It is the well-settled law that a statute for voluntary dissolution of a corporation upon a vote of less than the entire outstanding stock, being as to opposing or non-consenting stockholders an involuntary proceeding, must be strictly, construed and all requirements thereof strictly followed.  Luehrmann v. Trust & Title Co., 192 S. W. 1031; In re Packer City Tire & Rubber Co., 162 N. W. 897; Re Application Binghampton

Elec. Co., 143 N. Y. 261; St. Louis v. Gleason, 93 Mo. 33; In re George Ringler & Co., 127 N. Y. Supp. 934; In Matter of the Mart, 22 Abb. (N. Y.) 227; Theis v. Spokane Falls Gas Light Co., 34 Wash. 23.; In re Rattan Sales Co., 201 N. Y. 420; Economy Building Co. v. Paris Mfg. Co., 113 Ky. 246. (4) The statute requires the petition to contain ''a full and true inventory of all the books, vouchers and securities relating thereto.'' No such inventory was contained in the petition in this case. The averment in the petition with respect to books is not an inventory. Bouvier's Law Dic. (Rawle's Rev.), p. 1119; 23 Cyc. 347; Roberts v. Ins. Co., 19 Tex. Civ. App. 338. The petition is also required by the statute to set forth ''a clear and concise statement of the reasons which induced the stockholders to desire a dissolution of the corporation,'' where, as here, the dissolution is upon a two-thirds vote. There is no such allegation in the petition in this case. (5) The bona-fides of dissolution proceedings under the statute is to be inquired into by the court. The evidence in this case overwhelmingly established that it is not a bona-fide dissolution proceeding, such as is authorized by the statute, and the dissolution should, therefore, have been denied. Doe Run Lead Co. v. Maynard, 283 Mo. 646. (6) The evidence overwhelmingly establishes that the dissolution proceedings are not being conducted in good faith, but were initiated, and are being prosecuted, for the purpose of effecting a reorganization. The dissolution statute may not be used for such purpose. Doe Run Lead Co. v. Maynard, 283 Mo. 646.

*Thompson & Thompson* for defendant in error and respondents.

(1) The petition for dissolution sufficiently complies with the statute. Laws 1921, p. 265, sec. 9757. (2) The dissolution was voted and instituted in good faith. Laws 1921, p. 264, secs. 9756, 9759; Doe Run Lead Co. v. Maynard, 283 Mo. 646, 685. (3) The provisions of

Section 28 of Article IV of the Constitution of Missouri in reference to title of enactments are liberally construed with a view of sustaining legislation. Asel v. City of Jefferson, 229 S. W. 1048; Booth v. Scott, 205 S. W. 603. (4) Where the subject of legislation is stated in general language the title is sufficient, and need not descend to an enumeration of details or subordinate matters. State v. Hurley, 258 Mo. 275; Lynch v. Murphy, 119 Mo. 163; Asel v. City of Jefferson, 229 S. W. 1046. (5) Amendments to sections of the Revised Statutes may be validly made by acts whose titles refer only to the numbers of the sections amended, revised or repealed. Asel v. City of Jefferson, 229 S. W. 1046; Ex parte Hutchens, 246 S. W. 186. (6) At the time of the incorporation of the Dorris Motor Car Company in 1905 there were statutes in force in Missouri providing for dissolution by judicial decree. Therefore the company received its charter subject to same being lost by decree of dissolution upon resolution of its stockholders. R. S. 1899, secs. 976 to 981; R. S. 1909, secs. 2995 to 3000. (7) The Act of 1921 impairs no vested right, but merely changes a pre-existing mode of procedure for the dissolution of private corporations, and hence does not violate any constitutional inhibition against retrospective laws. 8 Fletcher's Cyclopedia of Corporations, sec. 5410, p. 9020; Clark v. Railroad, 219 Mo. 524; Roenfeldt v. Railroad, 180 Mo. 554. (8) For the same reason the Act of 1921 does not impair the obligations of a contract nor deny due process of law. 7 Fletcher's Cyclopedia of Corporations, sec. 4394, p. 7690; Henley v. Myers, 215 U. S. 373, 54 L. Ed. 240. (9) Abolishing the right of appeal from a judgment of dissolution is not a denial of due process of law. The constitutional guaranty is satisfied by a single hearing, and if one hearing is not due process doubling it will not make it so. 12 C. J. 1239; Railroad v. Backus, 154 U. S. 423, 38 L. Ed. 1031; Snyder v. Buel, 236 Ill. 429, 19 L. R. A. (N. S.) 377, and note.

RAGLAND, J.—On December 5, 1923, the Dorris Motor Car Company, a corporation organized under the laws of this State and having its principal office in the city of St. Louis, instituted in the circuit court a proceeding for voluntary dissolution, under the provisions of Section 9756-9759, Revised Statutes 1919, as amended by the Act of 1921 (Laws 1921, p. 264). On that day it filed its petition which complied substantially with said Section 9757, as amended, and which set forth, among other things, that the authorized capital stock of the corporation was $1,000,000; that 1,000 shares of preferred stock and 7,160.68 shares of common stock, each of the par value of $100, had been issued and paid up in full; and that on December 3, 1923, at a stockholders' meeting duly called for the purpose, a resolution favoring the dissolution of the corporation on the ground that its business had shown a loss for many months and its continuance in active business would result in further loss and ultimate insolvency, had been adopted by a vote of more than two-thirds in amount of all the issued and outstanding shares of stock. The petition further specified the names of the stockholders, together with their respective residences and the number of shares owned by each, from which it appeared that one H. B. Krenning was the holder of the entire issue of preferred stock.

Upon the filing of the petition an order was made requiring all persons interested in the corporation to show cause, if any they had, on or before January 2, 1924, why the corporation should not be dissolved. Thereupon the holders of more than two-thirds of the stock entered their voluntary appearance and consented to a dissolution. Summons issued for the others and a general notice was given by publication, all as required by said Section 9758.

A return was made to the order to show cause by Scott, Magill and Colburn, non-consenting stockholders. The allegations of their return may be epitomized as follows:

(1)   That the Act of 1921, heretofore referred to as amendatory of Section 9756 et seq., Revised Statutes 1919, is void because violative of both State and Federal constitutions (the particulars of which are fully set forth); (2) that the petition upon which the order to show cause is based is insufficient in respect to a jurisdictional matter, in this, that it "fails to contain a full and true inventory of all books, vouchers and securities relating to the estate, both real and personal, in law and equity, of such corporation;" (3) "that the said corporation is, and was at the time . . . of the adoption of said resolution, wholly solvent, and the par value of the common stock of said corporation but slightly impaired; that the said H. B. Krenning is the holder of the entire issue of 1,000 shares of preferred stock of said company and holds 192½ shares of the common stock of said company; that the preferred stock is entitled to cumulative dividends out of the earnings of said corporation at the rate of seven per cent per annum and has priority over the common stock in the liquidation of said corporation, but that the said dividends are not payable out of the assets of said corporation other than such as represent earnings of the company; that the said Krenning well knowing that he was not entitled upon liquidation to receive out of the assets of said company more than the par value of his stock and while standing in the fiduciary relation of director, did offer to the stockholders of said corporation, at a meeting held on the 3rd day of December, 1923, to waive a portion of his claim to dividends upon his said preferred stock in consideration of the voting by stockholders in favor of the dissolution of the company and the liquidation of its assets; that the alleged vote of stockholders in favor of the resolution set out in the petition filed by the said corporation herein was obtained through the said threat of receivership and the said offer to waive dividends made by the said Krenning;" (4) "that the board of directors in office at the date of the holding of said meeting, December 3, 1923, without waiting for the rendition of judgment of dissolution by this

court, and although the said directors knew that the annual meeting of the stockholders for the election of directors would be held on December 18th, proceeded to sell the assets of said company at a great sacrifice and are continuing to do so;'' (5) ''that upon the rendition of a decree of dissolution the board of directors of the said corporation then holding office would, under the statutes, constitute the trustees for the liquidation of the assets of the Company and the winding up of its affairs; that the said H. B. Krenning as a member of the said board of directors would constitute one of the said trustees, and that the interests of the said Krenning are antagonistic to those of the holders of common stock;'' and (6) ''that it is the purpose of the said H. B. Krenning and other members of the board of directors of the said corporation, who, together with the said Krenning, constitute a majority of the said board, to sacrifice the assets of the said corporation and to have the same purchased for their benefit and to re-organize the said corporation and thereby freeze out all of the other holders of common stock of said company.''

A return was also made by Guthrie et al., who were also non-consenting stockholders. Their pleading consisted of a return proper and a cross-bill. The return embodies substantially the same matters that are set forth in paragraphs 3, 4, 5 and 6 of the return of Scott et al. The cross-bill, omitting matters of inducement, was as follows:

''1. That for a period of fifteen years or more after the organization of said company it did a large and profitable business throughout the United States in the manufacture and sale of auto-vehicles and thereby established a high reputation for the excellence of its products, a large credit with banks and other institutions engaged in loaning money to manufacturing corporations and a good will of great value as an established and going concern.

''2. That under the management and control of a majority of its present directors the business of the company has lately been conducted at a loss creating an impair-

ment of the book value of its common stock to the extent
of twenty-five per cent and its credit with banks and trust
companies engaged in loaning money to manufacturing
concerns has been greatly impaired. That on or about the
16th day of November, 1923, said board of directors in
the preamble to a resolution framed by them to be sub-
mitted to a vote of stockholders on December 3, 1923, for
the purpose of authorizing a dissolution of the corpora-
tion and a liquidation of its affairs, confessed themselves
unable to continue the business of the company other-
wise than at a loss, although at that time some of the
executive officers of the company had adopted a policy
of retrenchment in overhead expense gradually curtail-
ing losses and impairment of capital stock, and had begun
the building of auto-trucks and auto-busses for which
there is a rapidly growing demand at profitable prices,
which effort on the part of said officers was defeated by
H. B. Krenning, a director and owner of all the preferred
stock in the company, by publicly threatening to have a
receiver of the corporation appointed, thereby impairing
the credit of the company and rendering the acceptance
and execution of valuable orders for the manufacture and
sale of auto-trucks and auto-busses impossible, in which
threatened action said Krenning had the support and
approval of a majority of the directors.

"3. That long prior to November 16, 1923, said Kren-
ning had been openly and publicly threatening to insti-
tute proceedings for the appointment of a receiver for
said company unless it should be dissolved and its busi-
ness liquidated, upon the sole ground that it was losing
money and in consequence thereof payment to him of
the par value of his preferred stock, to-wit, $100,000 and
between $46,000 and $47,000 pretended accumulated
dividends, was being endangered, although he then was
and for a long time prior thereto had been a director of
the company and a trustee for all the stockholders, and
although a conservative audit then in progress by re-
sponsible certified public accountants showed the com-
pany to have gross assets as of October 31, 1923, in the

sum of $831,979.42, and that after deducting therefrom a deficit of $50,358.06, debts aggregating $66,269.22, good will carried as an asset of $60,000 and the amount of his preferred stock, to-wit, $100,000, there remained assets of the book value of $555,352.15 belonging to the holders of 7,160.68 shares of common stock, and that each of the said shares of common stock of the par value of $100 had a book value of about $75 per share and that the company is in a solvent condition. That said Krenning, by his persistent threats for the appointment of a receiver, and his skillful manipulation, so dominated a majority of the board of directors as to lead them to adopt a resolution calling for a vote of the stockholders to be held December 3, 1923, upon a proposition to dissolve the company and liquidate its affairs, and that in order to secure a sufficient number of votes to adopt said resolution he agreed with said directors and certain large stockholders that he would remit all of his claim for alleged cumulative dividends except $15,000, which offer was accepted by them and said resolution adopted by more than a two-thirds vote, and these respondents aver that if a decree of dissolution is granted as prayed in the petition herein said directors as trustees have undertaken to bind the corporation to the payment to said Krenning of $15,000 as and for cumulative dividends on his preferred stock, although no earnings or profits have been made by the company within the past seven years, out of which dividends were or could be lawfully declared, and that the proposed payment of said sum of $15,000 to him would further unlawfully impair the book value of the common stock to the extent of more than $20 per share.

"4. That the proceedings herein for a dissolution and liquidation of the affairs of the company are solely in the interest of said Krenning in his efforts to immediately recover out of the assets of the company the par value of his preferred stock and alleged cumulative dividends thereon regardless of the rights of common stockholders; that he has the passive, if not the active, support of the

majority of the directors, including himself in the accomplishment of that purpose, which, if effected, will result in irreparable damage and loss to the common stockholders who are more than 300 in number and more than two-thirds of whom are the owners and holders of a small number of shares each, including these respondents, none of whom voted for said dissolution.

''5. These respondents charge upon information and belief that said Krenning and his associates, who with himself, include a majority of the directors, have already matured a plan whereby all of the assets of the company are to be disposed of at a forced sale and purchased by them either for re-sale at a profit or to be used by them as capital in a re-organization and continuance of the business of the company, excluding therefrom a large number of common stockholders, including these respondents, if a decree of dissolution is granted by the court.

''6. That the repeated open and public threats made by said Krenning that he would secure the appointment of a receiver for the company if not dissolved, the pending proceedings herein whereby a dissolution thereof is sought, have destroyed the credit of the company; greatly hindered, if not wholly prevented, any prosecution of its business, and the disputes and controversies arising out of said threats and the application to dissolve have now brought the company to the verge of ruin and bankruptcy.

''7. That said Krenning, by reason of his personal interest as alleged above, is disqualified to either act as a director of the company or a trustee for all the stockholders, whether a dissolution is decreed or not, and the attitude of other directors, who, with Krenning, constitute a majority of the board and who either passively or actively aided him or his plans as alleged above, are also disqualified to either act as directors or as trustees if a dissolution should be decreed.

''Wherefore, these respondents pray that a receiver for said company be appointed by the court with authority and power to continue the business of the company

until such reasonable time as will allow the common stockholders to re-organize the business of the company, to rid themselves of the domination of said Krenning, and to preserve the charter and conserve the business and good will thereof as heretofore enjoyed for the benefit of all the stockholders, for such orders, judgments and decrees from time to time as the court may deem necessary to effect this purpose, and for general relief.''

On January 3, 1924, Colburn and Scott commenced a suit against the Dorris Motor Car Company and three of its directors, Thompson, Krenning and Woods, wherein they sought to have the defendants in such suit enjoined from further prosecuting the dissolution suit and to have a receiver appointed for the corporation defendant. As a predicate for such relief the petition rehearsed the same matters and things that were set forth in the returns and cross-bill filed in the dissolution suit. These were elaborated and to some extent enlarged upon, but the issues tendered by the bill for injunction and a receiver were essentially the same as those presented by the returns and cross-bill in the dissolution suit.

On February 5, 1924, the issues had been joined in each of the two suits just referred to, and on that date they both stood for trial in the division of the Circuit Court of the City of St. Louis then presided over by Honorable A. B. Frey. The court announced that while the cases would not be consolidated, yet the evidence heard would be considered as offered in each. Counsel acquiesced and the hearing proceeded as though it were the trial of but a single cause. The court after hearing the evidence, the taking of which occupied several days, found for the defendants in the injunction suit and dismissed the bill. In the dissolution suit it found the issues for the petitioner, the Dorris Motor Car Company, adjudged dissolution of the corporation and ordered that its president and directors, as statutory trustees, take charge of its assets and administer them as provided by Section 9756, Revised Statutes 1919.

Scott, Magill and Colburn filed a motion for a new trial and one in arrest of judgment in the dissolution suit. These being overruled Colburn made application for an appeal, which was denied by the trial court. Subsequently he sued out a writ of error in this court. He was granted an appeal in the injunction and receivership suit. By stipulation of counsel one bill of exceptions was made to serve for both cases. On the consolidated abstract of the records filed in this court the dissolution suit is entitled, "In the Matter of Dorris Motor Car Company, Defendant in Error, v. Webster Colburn, Plaintiff in Error, No. 25,612," and the injunction and receivership suit, "Webster Colburn, Appellant, v. Dorris Motor Car Company, a Corporation, F. C. Thompson, H. B. Krenning and Parker H. Woods, Respondents, No. 25,832." The two causes were argued and submitted at the same time.

Numerous assignments of error are made by Colburn, as a plaintiff in error in one case and as appellant in the other, but the question of primary importance presented on the record is whether a proceeding had under the statute for the dissolution of a private corporation and which culminates in a judgment of dissolution is subject to appellate review. If not, the plaintiff in error and appellant is foreclosed as to most of the other questions raised. Section 9759, Revised Statutes 1919, provides that "from all final orders, judgments and decrees, which may be made or rendered in any such proceedings, appeals may be taken as in civil cases, except that no appeal shall be taken from a judgment allowing the dissolution of a corporation under the provisions of this article." This provision was inserted by the amendment of 1921. Plaintiff in error and appellant contends: first, that the Act of 1921 is void because unconstitutional; and, second, that even if valid, it does not deny the right of review by writ of error. Of these in order.

I. (a) The first ground upon which the constitutionality of the statute is challenged is the familiar not

**Title of Act.** to say much overused one that at its legislative stage it did not conform to the requirement that "no bill shall contain more than one subject, which shall be clearly expressed in its title." The title of the act is as follows:

"An Act to repeal sections nine thousand seven hundred fifty-six (9756), nine thousand seven hundred fifty-seven (9757) and nine thousand seven hundred fifty-nine (9759) of article one (1), chapter ninety (90) of the Revised Statutes of Missouri, 1919, and to enact three new sections in lieu thereof to be numbered sections nine thousand seven hundred fifty-six (9756), nine thousand seven hundred fifty-seven (9757) and nine thousand seven hundred fifty-nine (9759), respectively, and relating to the voluntary dissolution of private corporations, judgments of dissolution, appointment of trustees, applications for dissolution, contents of petitions for dissolution, and appeals from such judgments, and providing that certain properties shall not be diverted from certain uses, and providing that no objection shall be taken thereto on account of certain acts and proceedings."

By Section 1 of the Act, Sections 9756, 9757 and 9759, Revised Statutes 1919, were repealed and three new sections enacted in lieu thereof to be known as Sections 9756, 9757 and 9759. New Section 9756 provides that a private corporation organized under the laws of this State may be dissolved by a judgment of a circuit court: (1) when its directors or other officers, or the holders of the majority of the stock, conclude that the shares of stock or the property and effects of such corporation have been so far reduced by losses or otherwise that the corporation will not be able to pay all just demands against it or afford security to those who may deal with it; or (2) whenever the persons holding at least two-thirds of all the issued and outstanding shares adopt a resolution favoring the dissolution, whether the corporation be indebted or not, or whether its stock has depreciated below its par value or not. It further provides that a corporation shall be dissolved by a judgment of the circuit court

in the county where its principal office is located whenever the holders of at least ninety per cent of its stock for any reason they deem sufficient adopt a resolution favoring dissolution. This last provision is new. Aside from it the section repealed and the new one enacted in lieu of it are identical.

New Section 9757 provides, as did old Section 9757, for the form, character and contents of the application for dissolution. The only change made was the addition of a provision, that if the application be made pursuant to a resolution adopted by at least ninety per cent of the stockholders, it should not be necessary to state in the petition the reason which induced the stockholders to desire a dissolution of the corporation.

New Section 9759 is as follows:

"*If upon a hearing of any such application* based upon the conclusion of a majority of the stockholders that the share of stock or the 'property and effects of such corporation have been so far reduced by losses or other-wise that it will not be able to pay all just demands against the same or afford security to those who may deal with such corporation, or based upon the adoption of a resolution favoring dissolution, by vote of the holders of at least two-thirds but not as much as ninety per cent of the issued and outstanding shares of stock of such corporation, *the court shall be satisfied that the prayer of such petition can be granted without prejudice to the public welfare or the interest of the stockholders or the creditors of such corporation, the court may enter a judgment dissolving such corporation.* If upon a hearing of any such application based upon the adoption by the vote of the holders of at least ninety per cent in amount of all the issued and outstanding shares of stock in said corporation, favoring a dissolution of such corporation, the court shall be satisfied that such resolution has been duly adopted by the stockholders holding said last named proportion of the said stock, then the court shall enter a judgment dissolving such corporation. *Upon entering a judgment dissolving a corporation, the*

*court shall direct that the president and the directors or managers of said corporation shall take charge of its assets and administer them as now provided by Section 9755 of the Revised Statutes of Missouri for the year 1919; provided, that no property devoted to religious or other charitable uses shall be diverted from the objects for which it was granted, by means of the powers herein granted to any corporation to dissolve, but the same shall be preserved by the judgment of dissolution.* From all final orders, judgments and decrees which may be made or rendered in any such proceedings, appeals may be taken as in civil cases, except that no appeal shall be taken from a judgment allowing the dissolution of a corporation under the provisions of this article. It shall be no objection to any proceeding brought under the provisions of this article, nor shall it be a violation of any statute relating to the consolidation of corporations, that the property or assets or any part thereof of the corporation sought to be dissolved may, after a decree of dissolution shall have been made, be acquired and thereafter used by any other person or persons, natural or corporate, in the same or a similar business.''

The parts of the section italicized above constituted old Section 9759; the remainder was added by the act in question.

The general principles of construction applicable to the constitutional provision, ''No bill shall contain more than one subject which shall be clearly expressed in its title,'' are well known. They have been stated and applied by this court so often that a further discussion and reiteration of them would be worse than useless. We come at once therefore to the consideration of the alleged specific delinquencies for which the plaintiff in error and appellant arraigns the title under consideration. They are these: (1) the language of the title, ''relating to . . . judgments of dissolution, . . . and appeals from such judgments . . . ,'' is misleading; (2) the act contains provisions which attempt to amend or repeal: (a) the general statute relating to appeals in ju-

Dorris Motor Car Co. v. Colburn.

dicial proceedings and (b) the statute relating to the consolidation of corporations, while the title contains no intimation of such attempted amendments or repeals; and (3) the title recites that certain property shall not be diverted from certain uses, without stating the character of the property or the uses.

(1) The title gave notice that the bill dealt with the right of appeal from judgments of dissolution. The specific provisions with reference thereto were not indicated. But the members of the Legislature knew that as the law then stood (at the time the bill was under **Notice of** consideration) there was an unrestricted right **Denial of** of appeal from such judgments. And it must **Appeal.** have been obvious to them that unless it was proposed to in some way limit, modify or deny such right, there could be no reason for legislating with respect to it. How then could the language of the title have misled? The contention that it was calculated to do so is without substance.

(2) If it be conceded that the act contains provisions which modify, amend or repeal in part the general statute relating to appeals and the statute relating **Repeal by** to the consolidation of corporations, still **Implication.** the fact that the title contains nothing to indicate such amendments or repeals does not render the act obnoxious to Section 28 of Article IV of the Constitution. For neither that section nor Section 34 of said Article, relating to amendments, has any application to amendments and repeals by implication. [State ex rel. v. Miller, 100 Mo. 439; State ex rel. v. Draper, 47 Mo. 29; Geisen v. Heiderich, 104 Ill. 537; Anderson v. Commonwealth, 18 Gratt. (Va.) 295; Poe v. State, 85 Tenn. 495.]

(3) The language of the title, "and providing that certain properties shall not be diverted from certain uses," while vague and indefinite, is not misleading. It **Use of** might have been entirely omitted without in- **Properties.** validating the act. This for the reason that the provision to which it refers is germane to

the general subject of the act, namely, the voluntary dissolution of private corporations.

(b)   The validity of the act is further challenged on the ground that it impairs the obligation of contracts, deprives persons of property without due process of law, and denies them the equal protection of the law, in contravention of provisions of both State and Federal constitutions, including the Fourteenth Amendment.   The re-enacted Sections, 9756, 9757 and 9759, are in terms applicable to existing corporations organized under the laws of this State, and the specific ground of challenge is that the act, if given effect, impairs the contract existing between the Dorris Motor Car Company and its shareholders, implied in its charter, that its corporate existence shall continue for a term of fifty years.

*Impairment of Contract: Right to Appeal.*

The act introduced into the then existing statute relating to the dissolution of private corporations just two major amendments.   One made it mandatory upon the circuit court to render a judgment of dissolution in every case where ninety per cent of the stockholders had adopted a resolution favoring dissolution, regardless of the prejudicial effect, if any, which such dissolution might have on the interests of the remaining stockholders.   The other prohibited an appeal from any judgment of dissolution.   A casual reading of the act discloses that these two provisions are wholly unrelated.   The first deprives the court under certain conditions of any discretion as to the entering of a judgment of dissolution.   The second provides that no appeal shall be taken from any judgment of dissolution, and this regardless of whether such judgment be rendered under the mandatory provision, or under one of the others.   These two provisions being severable the act may be constitutional as to the one and unconstitutional as to the other.   [State ex inf. v. Insurance Co., 152 Mo. 1, 49; County Court v. Griswold, 58 Mo. 175, 199.]

Whether the provision authorizing ninety per cent of the stockholders of the corporation to force a dissolu-

tion, for any reason that seems sufficient to them, is unconstitutional because in terms applicable to corporations existing at the time of the passage of the act, we need not determine, because not involved in this case. The proceeding in this case which culminated in a judgment of dissolution was based on this provision of the act: "Whenever the persons holding at least two-thirds in amount of all the issued and outstanding shares of stock in any private corporation organized under the laws of this State shall adopt a resolution favoring a dissolution of such corporation, whether said corporation be indebted or not, or whether its stock has depreciated below its par value or not, such corporation may be dissolved by a judgment of the circuit court . . . if upon a hearing . . . the court shall be satisfied that the prayer of such petition can be granted without prejudice to the public welfare or the interest of the stockholders or the creditors of such corporation." Such provision was a part of the statute law of this State long before the Dorris Motor Car Company was incorporated, and hence was as much a part of its charter as though it had been expressly written therein.

The only right of which Colburn was deprived by the act in question was the right of appeal. That was purely a statutory right and one in which he had no vested interest. "By the great weight of authority a party can acquire no vested right to an appeal or other proceeding for review; it is a mere matter of further or additional remedy, which may accordingly be taken away by a retroactive statute." [12 C. J. 986, and cases cited in note 24.]

Nor is there any merit in his contention that the withdrawal of the right of appeal operated to deprive him of his property without due process of law or to deny him the equal protection of the law. "If a single hearing is not due process, doubling it will not make it so; and the powers of a State to make classifications in judicial or administrative proceedings carries with it the right to make such a classification as will give the parties belong-

ing to one class two hearings before their rights are finally determined, and the parties belonging to a different class only a single hearing." [Justice BREWER in Railway v. Backus, 154 U. S. 423, 427.]

II. During the pendency of this proceeding here, and before the argument and final submission of the causes, a motion was filed by the defendant in error to quash the writ of error sued out in the dissolution suit. The motion was briefed by both sides, and upon submission was overruled. On further consideration, and for the reasons presently to be stated, we conclude that it should have been sustained.

*Writ of Error: Dismissal.*

Section 9759 as amended provides that "from all final orders, judgments and decrees which may be made or rendered in any such proceeding, appeals may be taken as in civil cases, *except that no appeal shall be taken from a judgment allowing this dissolution of a corporation under the provisions of this article.*" The term "appeal" in its special and technical meaning designates the particular form of review, dependent upon statute for its existence, whereby a case is transferred, after decision, to a higher court for re-examination of the whole proceeding, and final judgment or decree in accordance with the result of such re-examination. In another sense, and a very frequent one, it denotes all kinds of proceedings for the review of cases—all proceedings commonly known as appellate [Nebraska Loan & Trust Co. v. Lincoln & B. H. R. Co., 53 Nebr. 246, 248; Dow v. Casey, 194 Mass. 48; City of Rockford v. Compton, 115 Ill. App. 406] ; and we are persuaded that it was in the latter sense that the term was used in the act under consideration. In Doe Run Lead Co. v. Maynard, 283 Mo. 646, decided at the April term, 1920, this court held that an appeal would lie from a judgment of dissolution rendered in a statutory proceeding for the dissolution of a corporation. At the next session of the Legislature thereafter, in 1921, the statute just quoted from was enacted withdrawing the

right.  The evil which the Legislature sought to remedy is
manifest.   Two years are ordinarily required for the
prosecution of an appeal to a final determination.  In the
meantime the corporation stands dissolved under the de-
cree of the circuit court.  It cannot continue its business
as a corporation; neither can it proceed with a sale or
liquidation of its property.  Its premises must be locked
up, overhead charges go on, and the assets rapidly de-
preciate.  If the Legislature used "appeal" in its special
and limited sense and meant to leave open to objecting
minority stockholders the concurrent method of review by
writ of error, by which they could prolong the litigation
as effectually as could have been done by appeal, then
the act wholly fails in its purpose.  Such a construction is
an impossible one.  It must be held therefore that the
statute prohibits appellate review, by either appeal or writ
of error, of a proceeding thereunder which culminates in
a judgment of dissolution.

III.   We come next to a consideration of the appeal
from the judgment dismissing the bill in the injunction
and receivership suit.  In that proceeding the appellant
sought to enjoin the defendant, the Dorris Motor Car
Company, its officers and agents, from further prose-
cuting the dissolution suit.

It is a familiar doctrine that where through fraud,
accident or mistake such an advantage will be gained in
a suit at law as will render it an instrument of great in-
justice, and it is against conscience to allow the suit to
proceed, equity will interfere by injunction.  But appel-
lant did not, either by bill or proof, bring himself within
the purview of that doctrine.  The dissolution suit as
originally instituted was statutory action at law.  Pres-
ently through the answers and cross-bills which were filed
it became a suit in equity.  [Doe Run Lead Co. v. May-
nard, supra.]  The cross-bill was demurred to, but the
demurrer was properly overruled.  The matters therein
set forth and the relief sought were entirely responsive
to the petitioner's suit for dissolution.  "A cross-bill in
equity pleading is a matter of defense to the original bill,

or an auxiliary suit by a defendant against the plaintiff, . . . either to afford the cross-pleader a more adequate defense to the original bill than a mere answer would give, or to afford him affirmative relief concerning the same matter covered by the original bill." [Fulton v. Fisher, 239 Mo. l. c. 130.] The appellant by joining in the cross-bill that was filed, or by filing one of his own, could have invoked precisely the same relief he sought through the injunction suit, namely, the denial of dissolution and the appointment of a receiver.

Appellant did not allege in his petition that he did not have an adequate remedy in the dissolution suit because no appeal was allowed from a judgment of dissolution, but it is perfectly obvious that the injunction suit was brought solely for the purpose of securing appellate review despite the prohibition of the statute. The legislative will may not be thus thwarted. Where the Legislature has seen fit to limit the right of appeal in certain cases, no other court has the right to review judgments rendered or to be rendered in such cases under the guise of an injunction proceeding. [Courchesne v. Santa Fe Fuel Co., 155 S. W. (Tex.) 684, 686.]

In view of the conclusions announced herein the proceeding in error instituted in this court (No. 25,612) should be dismissed, and in the cause on appeal (No. 25,-832) the judgment of the circuit court dismissing plaintiff's bill should be affirmed. It is so ordered. All concur except *Walker, J.,* absent, and *Atwood, J.,* not sitting.